**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NOTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISON**

**GLORIA WASHINGTON**                                          **PLAINTIFF**

**VS.**                                          **CAUSE NO.: 3:21cv223-MPM-RP**

**MGM RESORTS MISSISSIPPI LLC D/B/A**
**GOLDSTRIKE CASINO AND HOTEL and**
**JOHN DOE COMPANIES 1-10**                                          **DEFENDANTS**

**ORDER**

This cause comes before the court on the motion of defendant MGM Resorts Mississippi

LLC d/b/a Gold Strike Casino's ("Gold Strike") motion for summary judgment, pursuant to Fed.

R. Civ. P. 56.  Plaintiff Gloria Washington has responded in opposition to the motion, and the

court, having considered the memoranda and submissions of the parties, concludes that the

motion is not well taken and should be denied.

This is a premises liability action arising out of injuries allegedly suffered by plaintiff

after, she claims, she was bitten by bed bugs on several occasions in 2018 and 2019 while she

was staying at the Gold Strike Casino and Hotel in Tunica, Mississippi.  In seeking summary

judgment, Gold Strike has prepared a well-written brief which quite arguably makes strong

arguments that it acted as a reasonably prudent hotel in this case and that it should not be held

liable for the damages allegedly suffered by plaintiff as a result of any bed bug bites which she

sustained.  At the same time, this court believes that defendant is seriously disadvantaged by the

inherent nature of bed bug actions relative to the variety of tort action which it most commonly

sees asserted against casinos, namely slip and fall claims.  In slip-and-fall actions, it is well

established that a hotel or other invitor may only be held liable if the plaintiff is able to  "(1)

show that some negligent act of the defendant caused her injury; (2) show that the defendant had actual knowledge of a dangerous condition and failed to warn the plaintiff, or, (3) show that the dangerous condition existed for a sufficient amount of time to impute constructive knowledge to the defendant[.]" *Bonner v. Imperial Palace of Miss., LLC*, 117 So.3d 678, 682 (Miss. Ct. App. 2013).

Based upon this authority, this court has frequently granted summary judgment to casinos and other defendants, in cases where there is insufficient proof that any of these potential avenues for slip-and-fall recovery exist. *See, e.g. Ward v. Barden Mississippi Gaming LLC*, 2009 WL 426275, at *2 (N.D. Miss. Feb. 20, 2009). This is often made possible by the inherent nature of slip-and-fall-actions, since, not infrequently, it can be established by surveillance video or eyewitness testimony whether or not a slippery condition on a floor existed for a sufficient period of time to put the defendant on notice of the presence of the danger.

Bed bug cases are different. There is, for obvious reasons, typically no video evidence regarding whether, and for how long, bed bugs might have been present in a particular bed, and this likewise strikes this court as being a difficult matter to prove by eyewitness testimony. Obtaining dismissal on summary judgment in murky factual contexts is always difficult for any defendant, given that this court is, at this stage of the proceedings, required to view the facts in the light most favorable to the plaintiff, as the non-moving party. In the court's view, concluding that no genuine issues of fact exist in this regard is particularly difficult in cases where, as here, a defendant concedes that it may well, in fact, have had bed bugs on its premises and instead relies upon an argument that it acted reasonably in dealing with this threat. Determining whether a premises owner did, in fact, act reasonably in dealing with a particular hazard is one which a jury is best suited to make, and, as discussed below, defendant offers this court no Mississippi

authority which supports a trial court's resolving these bed bug-related factual questions on summary judgment.

In its brief, defendant appears to concede that bed bugs may well have found their way into its hotel, writing that:

> Bed bugs have made somewhat of a comeback in recent years after being nearly eliminated by the use of potent residual pesticides. Memphis, Tennessee, where Plaintiff resides, was rated among the most bed-bug infested cities in the United States in 2018 and 2019. Bed bugs are especially hard to prevent in places like hotels due to the perpetual flow of travelers. They are notorious hitchhikers, often being introduced into hotels in suitcases, backpacks, clothing and other items guests bring with them. In addition to hotels, bed bugs are common in homes, apartments, schools, hospitals, nursing homes, offices, libraries, theaters, and on public transportation. Unlike other pests that feed on filth, bed bugs can thrive even in pristine environments. According to the Centers for Disease Control and Prevention ("CDC"), "[b]ed bugs have been found in five-star hotels and resorts and their presence is not determined by the cleanliness of the living conditions where they are found." The best method of prevention is regular inspection for signs of infestation. However, a recent infestation of bed bugs may be extremely difficult to discover, as the eggs and newly hatched nymphs are no bigger than specs of dust.
> Bed bug bites can be indistinguishable from other skin reactions. Bed bug bites are characteristically and preferentially distributed only on unclothed areas of the body and are not typically found on the torso. Itching and irritation thought to be related to bed bugs may be confused with allergic reactions to household cleaning products, medications or certain foods. The principal method of confirming that a person has been bitten by bed bugs is to find an actual specimen temporally and proximally related to the suspected exposure. Medical literature also describes blood tests for immunoglobulin G (IgG) and immunoglobulin E (IgE) antibody studies to assess for exposure to bed bug species, which were not performed on the Plaintiff in this case.

[Brief at 2-3].

Defendant thus appears to acknowledge that it has had to deal with bed bug infestations at its hotel in Tunica, and, in arguing that it acted reasonably in doing so, it writes that:

> Gold Strike hotel has approximately 1,100 rooms and hosts hundreds of thousands of visitors every year. Gold Strike regularly inspects for bed bugs and tracks and closely monitors all reports of suspected pest activity, including bed bugs. Gold Strike employs a number of practices and policies to prevent and eliminate bed bug infestations. All new hires in housekeeping are given instructions on what to look for and how to spot possible signs of bed bug activity when cleaning rooms, and housekeeping supervisors are instructed to spot check one or two rooms each day for possible bed bug activity. Gold

Strike also has a robust response plan for any reports of suspected bed bugs, which includes immediately locking the room out, moving the guest to a new room, and having the suspect room inspected by a professional pest control company. If suspected bed bug activity is confirmed, guests are offered heat treatment for their belongings. Treatment of the suspect room includes bagging and treating all items in the room, including drapes and curtains, by a professional pest control company. Gold Strike goes a step further by treating all vacuum cleaners used on the same hotel floor where bed bug activity was found. In addition, all rooms adjacent to, above, and below the affected room are also locked out and inspected to ensure the bed bugs have not spread. All complaints, reports and/or findings of bed bugs are tracked and recorded by Gold Strike.

Gold Strike's policies and procedures are extremely effective. According to Dr. Michael Potter, a renowned bed bug expert in the United States, Gold Strike's incidence rate for positive bed bug findings of less than 1% of rooms (44 out of 1,133 rooms over a four-year time period), places Gold Strike well below the national average for the hospitality industry. Dr. Potter further opines, "Contrary to assertions by the Plaintiff and her representatives, I see no evidence [Gold Strike] violated recommended guidelines and practices for managing bed bugs in hotels.

[Brief at 3-4].

In arguing that plaintiff's proof of negligence is insufficient, defendant further writes in

its brief that:

The Plaintiff in this premises liability action claims she was bitten by bed bugs on several occasions in 2018 and 2019 at Gold Strike Casino in Tunica, Mississippi, which is operated by Defendant MGM Resorts Mississippi, LLC (referred to hereafter as "Gold Strike"). According to company records, Plaintiff reported the first incident as a possible bed bug encounter, but professional inspectors found no evidence of bed bugs in the room. Plaintiff reported the second incident, approximately three weeks later, as an allergic reaction, but she did specifically state that it was due to bed bugs. Although not alleged in her Complaint, Plaintiff has claimed during this litigation that she encountered bed bugs at Gold Strike four more times between November 11, 2018 and February 2, 2019. These incidents were not reported to Gold Strike, and company records for the relevant time period show no reports or findings of bed bugs in the rooms occupied by the Plaintiff or any nearby rooms.
In short, there is no evidence that Plaintiff was actually bitten by bed bugs at Gold Strike. Furthermore, even if Plaintiff could prove the existence of bed bugs in her rooms, she has no evidence to prove that the bed bugs were caused by Gold Strike's negligence or that Gold Strike knew or reasonably should have known of the existence of bed bugs in Plaintiff's hotel rooms. For this reason, summary judgment should be granted to Gold Strike.

[Brief at 1-2].

In arguing that it acted reasonably in dealing with an unavoidable bed bug threat, this court believes that defendant has presented arguments which a jury may well find to be persuasive. Unlike a jury at trial, however, this court is required to view the facts in the light most favorable to plaintiff, and, that being the case, it is unable to conclude that defendant has established a right to summary judgment. In so concluding, this court notes that defendant concedes that "there are no reported bed bug decisions in Mississippi," [reply brief at 8], and much of the limited nationwide authority which does exist in this context appears to stand for the non-controversial proposition that there is no strict liability in the bed bug context. *See, e.g. Thomas v. NCL (Bahamas), Ltd.*, 2014 WL 3919914, at *3 (S.D. Fla. Aug. 11, 2014) ("mere fact that an injury occurred does not make [defendant] liable" for alleged exposure to bed bugs). This court certainly agrees that no strict liability exists in this context, and, in denying summary judgment, it is not suggesting otherwise. This court does conclude, however, that defendant's evidence that it acted reasonably in dealing with the bed bug threat at its hotel constitutes the sort of proof which a jury is best suited to consider at trial and that the deferential summary judgment standard precludes it from deciding this issue as a matter of law.

As quoted above, defendant relies heavily upon arguments that plaintiff failed, on certain occasions, to notify it of the alleged bed bug infestations in her room. [1] However, defendant's

---

[1] Plaintiff's reaction to the alleged bed bugs in her room was considerably more muted than that of former U.S. Congressman Seargent Smith Prentiss, a Vicksburg attorney who is considered one of the greatest orators in Congressional history. The Vicksburg Daily News recounts how, when an inebriated Prentiss discovered one night in the mid-1830's that he was sharing a bed with bed bugs in a Raymond hotel, he first attempted to smite them with shots from his pistol. When the hotel owner expressed concern over this approach towards pest control, Prentiss and his companion decided to place an offending bed bug on trial, with hotel guests serving as witnesses. The newspaper describes how "the eloquent Prentiss spoke in the insignificant creature's defense for more than three hours, until dawn arrived, and the guests at the hotel who crowded the room to hear the great orator termed it the best address of his career." *See* https://vicksburgnews.com/in-defense-of-a-bedbug/

arguments on this point are weakened by its own admission, quoted above, that it was, and is, well aware that bed bug infestation is a serious problem for hotels in the Memphis area, including its own. It strikes this court that, in light of this admitted knowledge of the risk of bed bug infestation, it was (presumably) incumbent upon Gold Strike to take reasonable steps to mitigate the risks to its guests, regardless of whether plaintiff specifically informed it of suspected bed bugs in her room or not.

The crucial issue is whether or not the steps which Gold Strike allegedly took to mitigate the bed bug risk at its Tunica hotel were legally sufficient. While defendant's briefing, quoted above, suggest that it may have strong jury arguments on this issue, this court is unable to conclude that no genuine fact issues exist. In the court's view, a determination regarding whether a defendant acted as a reasonably prudent hotel operator in addressing the known risk of bed bug infestation is one which a jury is well suited to make, and this case lacks the sort of "smoking gun" video evidence which is often present in slip-and-fall cases.

This court does agree with defendant that plaintiff's evidence in this case is far from overwhelming, and this applies to the expert testimony which she seeks to offer regarding the sufficiency of defendant's remedial actions in this case. Specifically, plaintiff seeks to offer the testimony of Mark Clinton, whom she describes as a "premises liability" expert. In seeking to strike Clinton's testimony under *Daubert*, defendant notes that Clinton "began his education at the Insurance Institute of America in 1986 where he studied risk management, principles of reinsurance, and accident prevention," but it appears to be correct in stating that this expert has no specific expertise in the field of bed bug risk mediation. [Brief at 4].

---

Bed bugs and booze, pistols and politicians and high-flung rhetoric from nights gone by in old Raymond now couple with the tumbling dice and rattling slots of today's Tunica. These persistent little fellows continue to pester enthusiasts of the rented bed. It's hard to keep a bad bug down.

In opposing the motion to strike, plaintiff argues that:

In the present case, Mr. Clinton was retained regarding risk management and control. His opinion regarding the efficacy of Defendant's policies and procedures regarding its preventive measures to avoid bed bugs, and reactive procedures to bed bugs will be helpful to the jury, the trier of fact. He is qualified to review Defendant's policies and procedures regarding the incident at issue in this suit. Just because Mr. Clinton does not have an entomology degree does not mean he cannot express his expert opinion regarding how a business should handle this risk.

[Brief at 5]. In its reply brief, defendant responds that:

"Risk management" is an extremely broad category, whereas the issue in this case is relatively narrow – bed bug prevention and remediation. Is Clinton qualified to opine on this issue? Not according to his curriculum vitae. Plaintiff had an opportunity when she designated Clinton, and again when she responded to the instant Motion, to provide his specific qualifications for the relevant issues in this case. She failed to do so. Plaintiff claims Clinton does not need an entomology degree to express an opinion about how a business should handle the specific risk of bed bugs. Even if that were true, he would still need some objective basis for evaluating Gold Strike's bed bug policies and procedures – whether it be entomology, pest control, or some other discipline that would impart specialized knowledge specific to bed bugs. Clinton certainly does not have any education, training or experience in these fields, and Plaintiff has offered no new information in her Response by which the Court could reliably qualify this expert to opine on bed bugs.

[Reply brief at 2-3].

It appears to this court, at this juncture, that defendant has the better of the arguments as it relates to Clinton's ability to offer expert testimony regarding the specific issue of bed bug remediation. This does not necessarily mean, however, that Clinton has no helpful testimony whatsoever to offer the jury in this case, since he does appear to have at least some expertise in general risk management principles. Moreover, this court is hesitant to rule definitively on this issue at this juncture, in light of uncertainties regarding whether defendant was itself derelict in providing certain documents requested by plaintiff in discovery. Plaintiff asserts that defendant was, in fact, late in providing documents to be reviewed by Clinton, to which defendant responds that:

> Gold Strike believes the documents were emailed to Plaintiff shortly after the Agreed Protective Order was entered on August 11, 2022. However, if the documents were not sent earlier than September 8, 2022, it was due to mere inadvertence and not any intent to delay production.

[Reply brief at 5, fn 8].

Defendant thus appears to acknowledge the possibility that it might have provided a late disclosure of documents in this case, and, in light of this acknowledgement, this court concludes that it should wait until trial to make a final determination regarding whether Clinton has any helpful expert testimony to offer the jury in this case. This court is presently inclined to, at the very least, severely restrict Clinton's proposed testimony, but, before ruling on this issue, it wishes to have a clearer picture regarding what information was provided for him to review during discovery and when it was provided. With this caveat, this court will dismiss defendant's motion to strike Clinton's testimony without prejudice to its arguments in this regard being re-asserted at trial. This court notes, however, that even in the (likely) event that it precludes Clinton from testifying regarding the issue of bed bug risk remediation, it will still be inclined to allow a jury to decide the ultimate question of negligence in this case. In so stating, this court notes that 1) there may well be aspects of the duty of care in this context which are understandable by jurors without expert testimony and 2) even if jurors accept as accurate Gold Strike's representations regarding the nature of its duty of care, they would not necessarily be required to believe, as a factual matter, the representations of its witnesses regarding actions taken. Thus, while this court believes that defendant has potentially strong jury arguments in this context, it concludes that a jury should, in fact, decide these issues and that a grant of summary judgment would be inappropriate.

It is therefore ordered that defendant's motion for summary judgment is denied, and its motion to strike Clinton's expert testimony is dismissed without prejudice to its being renewed at trial.

This, the 7th day of December, 2022.

/s/ Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPP